# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANNA BYRA-GRZEGORCZYK,   :
           :
     Plaintiff,   :
           :
v.           :   3:06cv905 (MRK)
           :
BRISTOL-MYERS SQUIBB COMPANY, :
           :
     Defendant.  :

=================================================================

SADIA ABID,       :
           :
     Plaintiff,   :
           :
v.           :   3:06cv1035 (MRK)
           :
BRISTOL-MYERS SQUIBB CO.,  :
           :
     Defendant.  :

## RULING AND ORDER

Pending before the Court are two motions for summary judgment in the above-referenced

cases.[1] The Defendant, Bristol-Myers Squibb Co. ("Bristol-Myers"), filed a Motion for Summary

Judgment [doc. # 68] in *Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, No. 006cv905 (MRK) and

a Motion for Summary Judgment [doc. # 56] in *Abid v. Bristol-Myers Squibb Co.*, No. 06cv1035

(MRK).  For the reasons detailed below, the Court grants in part and denies in part Bristol-Myers'

Motions for Summary Judgment.

Bristol-Myers also filed a motion to strike portions of Plaintiffs' 56(a)(2) Statement on the

---

[1] These two cases were consolidated for pre-trial purposes.  *See* Order Granting Motion to Consolidate Cases for Pretrial Purposes  [Byra, doc. # 20, Abid, doc. # 14].

grounds that Plaintiffs did not submit a statement of disputed facts and also because, Bristol-Myers claims, many of Plaintiffs' denials did not adequately cite to evidence in the record. *See* Defendant's Motion to Strike Response [Byra doc. # 82, Abid doc. # 74]. In response to the Motion to Strike, Plaintiffs filed a motion to include a statement of disputed facts, *see* Motion to Amend/Correct 66 Local Rule 56(a)(2) Statement to Include a Statement of Disputed Issues of Material Facts [Byra doc. # 89, Abid doc. # 79], which the Court grants. Therefore, Defendant's Motion to Strike on that ground is moot. The Court finds little merit in the Defendant's remaining objections. However, to the extent they do have merit, the Court has not relied on those particular statements in arriving at its decision. Thus, the Court denies Defendant's Motion to Strike.[2]

## I. Standard for Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The

---

[2] Both Abid and Byra-Grzegorczyk were represented by counsel throughout the briefing. After the Motions for Summary Judgment were fully briefed, counsel for Plaintiffs withdrew from the case and now both Plaintiffs are proceeding *pro se.*

Court must draw all ambiguities and inferences in favor of Plaintiff. *See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Andersen*, 477 U.S. at 249-50. The purpose of summary judgment is not to try the factual disputes but instead to see if there are material factual disputes to try.

## II. Facts

In accordance with the standard for summary judgment, the following are the facts taken in the light most favorable to Plaintiffs. Abid and Byra-Grzegorczyk are both former employees of Bristol-Myers in the Wallingford Separations Group ("WSG") of the Analytical Research and Development Department ("AR&D"). *See* Defendant's Local Rule 56(a)(1) Statement [Byra doc. # 70, Abid doc. # 58] ("Def's 56(a)(1)"), Plaintiffs' Local Rule 56(a)(2) Statement [Byra doc. # 76, Abid doc. # 66] ("Pls.' 56(a)(2)"), ¶¶ 1-5. WSG was responsible for assisting Bristol-Myers' Process Research and Development Department ("PR&D") in the development of new drugs by developing analytical methods to assess the potency and purity of pharmaceutical compounds. *See id.* ¶ 1. WSG performed most of its analytical work for Wallingford PR&D, which would send samples of compounds to the separation scientists in WSG to analyze them and determine whether they contained impurities. *See id.* ¶¶ 5, 8.

Abid was hired by Bristol-Myers in 1989 as an Associate Research Scientist and, after several lateral moves within the company, joined WSG in 1998. *See id.* ¶¶ 10-14. During this time, Abid received several promotions and was promoted to Research Scientist II (level D5) in 1998. *See id.*

¶¶ 21-23.  After 1998, Abid attempted to move from a level D5 position to a level D6 position, but she was not promoted.  *See id.* ¶¶ 24-26.  Bristol-Myers gives as its reason that the move from level D5 to D6 was a significant step in the hierarchy and that most D6 level employees held PhDs.  *See id.* ¶ 25.  Abid, however, contends that she learned that a male employee was promoted to level D6 after only being with the company for six months and that a PhD was not a requirement for a D6 level position.  *See* Plaintiffs' Response in Opposition to Motion for Summary Judgment [Byra doc. # 76, Abid doc. # 66], Ex. 1, ¶ 6.  From 1998 to 2002, WSG consisted of two scientists, Abid and another employee, Tony Spears.  *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66]*,* ¶ 16.

In April 2002, Qi Gao became the manager of the Wallingford AR&D and Abid's supervisor. *See id.* ¶ 27.  Abid claims that shortly after Gao was promoted, she noticed that Gao treated males, particularly white males, with more respect and consideration than Abid was afforded.  *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 1, ¶ 7.  Their relationship, which was previously "cordial," became strained.  *See id.* ¶ 50.

Also in 2002, AR&D decided to hire another separations scientist to take a leadership role in WSG.  *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶ 35.  In September 2002, Byra-Grzegorczyk was hired for this position and became the technical leader of WSG in December.  *See id.* ¶ 45.  She reported directly to Gao and became Abid's immediate supervisor, although Spears continued to report directly to Gao.  *See id.*  ¶¶ 48-49.  Gao reported to Associate Director of AR&D Gerald Didonato, Didonato reported to Director of AR&D Steven Klohr, and Klohr reported to Vice President of AR&D Mark Powell.

Byra-Grzegorczyk alleges that Gao soon targeted her for harassment and intimidation.  *See*

Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 6, ¶¶ 14-16. Gao required that Byra-Grzegorczyk attend weekly meetings, during which, according to Byra-Grzegorczyk, Gao would verbally abuse her and would threaten her that the company would not give her a second chance if she did not fulfill all of her job responsibilities. *Id.* ¶¶ 15-16. Byra-Grzegorczyk reports that she was often reduced to tears during these meetings. *Id.* ¶ 17.

On June 30, 2003, Human Resources conducted a New Leader Integration for Gao. Human Resources representative Cindy Cannon solicited anonymous comments from AR&D scientists regarding Gao and she received many negative comments, including that Gao "[n]eed[ed] to learn how to better promote group and members" and that she "[m]icro-manage[d] team." Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶ 73. Also at the June 30 New Leader Integration, Spears made the comment that Gao"treat[ed] women and men differently." Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 9 at 92. Predictably, the meaning of this statement is the subject of much dispute between the parties.

Relations between Plaintiffs and Gao continued to deteriorate after the New Team Integration. In response to one of her weekly meetings with Gao, Byra-Grzegorczyk wrote a letter to Klohr in September 2003, accusing Gao of being "very critical, negative and authoritarian." Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶ 84. In response to this letter, Klohr and DiDonato met separately with Gao and Byra-Grzegorczyk. *Id.* ¶ 86. Byra-Grzegorczyk claims that Klohr and DiDonato acted with anger and hostility towards her, meeting with her for more than three hours while they met with Gao for only five minutes. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 6, ¶¶ 26-27. Abid claims that during this meeting, she could hear voices shouting at Byra-Grzegorczyk. *See id.* Ex. 1, ¶ 61.

After the meeting with Klohr and DiDonato, Gao required Byra-Grzegorczyk to continue to attend weekly meetings with her. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 6, ¶¶ 28-29. According to Byra-Grzegorczyk, Gao used these meetings to degrade, belittle, and wear her down psychologically. *See id.* ¶ 16. As an example, Byra-Grzegorczyk asserts that Gao would refer to her as "woman" while pounding her chest with her fists. *See id.* Ex. 10 at 431.

Bristol-Myers claims, and Plaintiffs do not dispute, that some members of PR&D were unsatisfied with the work product of WSG during this period and that there were communication problems between PR&D and WSG, *see, e.g.*, Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶¶ 19, 98-100, 107, 111, although the extent of and reason for this dissatisfaction is disputed, *see, e.g.*, *id.* ¶¶ 18, 93-94. Bristol-Myers also claims that as a result of this dissatisfaction, PR&D sent less and less work to WSG, which resulted in WSG being less and less busy. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶¶ 20, 92, 105, 182-183. Plaintiffs respond, on the other hand, that they remained busy throughout the period in question. *See, e.g.*, Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 1, ¶ 24.

In November 2003, AR&D and PR&D held a joint meeting in order to improve communication and collaboration between the two departments. Plaintiffs claim that Gao humiliated, embarrassed and verbally assaulted them during the meeting, attacking their credibility and professional competence. *See id.* ¶ 30. After the meeting, Abid wrote to Powell and complained about Gao's treatment of her. *See id.* Ex. 13. In response to the letter, Klohr visited Wallingford AR&D to speak with Gao, Plaintiffs, and other employees about the complaint, although not to Abid's satisfaction. *See id.* Ex. 1, ¶ 8. Due to the anxiety and emotional distress caused by Gao,

Byra-Grzegorczyk went on short-term disability from February 2004 until June 2004. *See id.* Ex 6, ¶ 45. While Byra-Grzegorczyk was on short-term disability, Gao became Abid's direct supervisor. Abid claims that Gao "unjustly criticized and tormented" her while also alleging that Gao refused to have weekly meetings with WSG. *Id.* Ex. 1, ¶¶ 13-19.

During this time period, Gao gave Byra-Grzegorczyk and Abid several poor performance reviews. While Byra-Grzegorczyk and Abid received favorable annual performance reviews from Gao for 2002, *see* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶¶ 56, 67, they received negative performance reviews for 2003 and 2004. *See id.* ¶¶ 170-171, 209. Both Plaintiffs responded to their 2003 reviews by submitting written statements in which they contested the accuracy of the reviews. *See id.* ¶¶ 174, 210. In at least one case, Gao altered Byra-Grzegorczyk's review of Abid to include negative references and comments. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 1, ¶ 15. Klohr later denied Abid's request for tuition reimbursement on the basis of these poor reviews. *See id.* Ex. 25.

Also during this time period, Byra-Grzegorczyk and Abid filed several internal and external complaints against Gao. In January 2004, Byra-Grzegorczyk contacted Robyn Greene-Geller in the Human Resources Department to complain that Gao had harassed her "on several occasions." Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶ 119. Greene-Geller passed the complaint along to the Director of Human Resources in Wallingford, David Fritzsche, who initiated an investigation into the complaint. *See id.* ¶¶ 121-122. After meeting with everyone in the Wallingford AR&D with the exception of one person, Fritzsche reported the results of his investigation to Byra-Grzegorczyk on January 30, explaining that "while there may be some inconsistent and poor managerial behavior behind the events you described to me,

I did not find any evidence of discriminatory intent." *Id.* ¶ 141. Abid complained to Klohr in February about Gao, and Klohr asked Fritzche to investigate. *See id.* ¶¶ 148, 150. After another investigation, Fritzche reported to Abid that he had found no evidence of discrimination. *See id.* ¶ 164.

In May 2004, while still out on short-term disability, Byra-Grzegorczyk filed a complaint with Bristol-Myers Ombudsman Sandra Holleran. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 23. Byra-Grzegorczyk claims that after one phone call, Holleran ignored her complaint. *See id.* Ex. 6, ¶ 51. Abid subsequently filed a complaint with Ombudsman Holleran, which was met with a similar response. Finally, on December 6 and 13, 2004, respectively, Abid and Byra-Grzegorczyk filed complaints with the Connecticut Commission on Human Rights and Opportunies ("CHRO") claiming gender discrimination. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶ 277.

In late 2004, Klohr and DiDonato began to prepare the business case for WSG's elimination, ostensibly because of lack of work and poor performance. *See id.* ¶ 301. On March 15, 2005, Bristol-Myers's Salary and Bonus Committee voted to eliminate WSG. *See id.* ¶ 302. All three members of WSG — Abid, Byra-Grzegorczyk, and Spears — were informed on March 31 that their employment was terminated effectively immediately, *see id.* ¶ 311, and Plaintiffs were escorted from the building that same day by security personnel. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 6, ¶ 81.

Plaintiffs later filed suit for violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 *et seq.*, both for gender discrimination and retaliation. They also bring claims for

promissory estoppel, defamation, and intentional infliction of emotional distress. In addition, Byra-Grzegorczyk asserts claims under the Equal Pay Act, 29 U.S.C. § 206(d), as well as for invasion of privacy, breach of contract, and negligent supervision. *See* Complaint [doc.# 1].

### III. Sex Discrimination under Title VII and CFEPA

Plaintiffs allege that Bristol-Myers terminated their employment and failed to promote them because of their gender in violation of Title VII and CFEPA. They also claim that they were subjected to a hostile work environment that changed the terms and conditions of their employment in violation of Title VII and CFEPA.

As this Court has had the opportunity to discuss many times before, gender discrimination claims are governed by the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must establish a *prima facie* case of discrimination by showing that: "1) she is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002). Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory rationale for the adverse action. If the defendant does so, the ultimate burden of proof shifts back to the plaintiff to demonstrate that the defendant's articulated justification is merely a pretext for discrimination. *See id.* The analysis is the same under CFEPA. *See Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998) ("In defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII of the Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60.").

**A. Termination**

The Court is satisfied that Byra-Grzegorczyk and Abid have carried their *prima facie* burden in support of their Title VII and CFEPA sex discrimination claims regarding their termination. They are members of a protected class and they suffered an adverse employment action. Although Bristol-Myers disputes that Byra-Grzegorczyk and Abid were qualified for their jobs, Plaintiffs have supplied enough evidence to make this an issue of material fact. Finally, Byra-Grzegorczyk and Abid have alleged sufficient circumstances giving rise to an inference of discrimination. The comment made by Spears during the June 30 New Leader Integration, Gao yelling "woman, I'm talking to you. Gao is talking to you" to Byra-Grzegorczyk, *see* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 10 at 431, and the seeming hostility with which Plaintiffs' claim Gao approached them all could give rise to such an inference. Although Gao did not make the decision to terminate Plaintiffs herself, her supervisors depended upon Gao's characterization of Plaintiffs' work and the performance reviews she wrote. Furthermore, Abid and Byra-Grzegorczyk filed several complaints that alerted Gao's supervisors to their allegations of discrimination and at least some of these complaints were ignored. The initial burden in a disparate treatment case is *de minimis* and the Court concludes that Plaintiffs have satisfied the first step in the *McDonnell Douglas* inquiry. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (citation omitted).

Once a plaintiff sets forth a *prima facie* claim of discrimination, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." *Mario*, 313 F.3d at 767. Here it is clear that Bristol-Myers has proffered such a reason. According to Bristol-Myers, the problem lay

not with Gao, but with the poor quality of Byra-Grzegorczyk's and Abid's work and their inability to accept feedback without becoming defensive and angry. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶¶ 108-111, 256-257. Bristol-Myers cites the depositions of several PR&D employees, who claim that Abid in particular was difficult to work with. *See, e.g.*, Def.'s Mot. for Summ. J. [Byra doc. # 69, Abid doc. # 56], Ex. 5 at 73-75. According to Bristol-Myers, PR&D sent less and less work to WSG in an effort to avoid Byra-Grzegorczyk and Abid. Because of the poor quality of the work and because WSG had very little work as a result, Bristol-Myers says they decided to eliminate WSG. Thus, both reasons proffered — lack of work for WSG and poor work quality — constitute legitimate, nondiscriminatory reasons for their termination.

Bristol-Myers having proffered a legitimate, nondiscriminatory reason for its actions against Plaintiffs, "the presumption of discrimination created by the prima facie case drops out of the analysis, and [Bristol-Myers] 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Mario*, 313 F.3d at 767 (quoting *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)). The burden thus shifts back to Byra-Grzegorczyk and Abid to show "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). The Court must not rely solely on the plaintiff's rebuttal of the employer's explanation but must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Id.* (quoting *Reeves*, 530 U.S. at 143).

Upon its review of the entire record in this case, the Court concludes that while Plaintiffs'

case is thin, there are questions of material fact that require this Court to submit Byra-Grzegorczyk's and Abid's Title VII and CFEPA termination claims to the jury for resolution. First, Plaintiffs deny that WSG had very little work during 2003 and 2004. *See* Pls.' Statement of Disputed Facts [Byra doc. # 55, Abid doc. # 79], ¶ 2. Bristol-Myers has provided evidence that on average WSG was completing many fewer assignments than other separations scientists. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶¶ 252-255. Abid and Byra-Grzegorczyk, however, state that their assignments were more complicated and took more time to complete. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 1, ¶ 35.

Second, although it is undisputed that some members of PR&D complained about WSG, whether these complaints were isolated incidents or whether they illustrate a broader pattern of dissatisfaction is very much in dispute. *See, e.g.*, *id.* Ex. 45 (thank-you emails from PR&D scientists). The parties' characterization of the November 14 meeting with PR&D is a perfect example of this disagreement. Bristol-Myers claims that the meeting was called because of PR&D's general dissatisfaction with WSG's work and that Abid became defensive and loud. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶¶ 94-104. Plaintiffs, on the other hand, contend that Gao called the meeting in order to humiliate and harass them, that there were only a few negative comments about their work, and that Abid remained quiet and respectful at all times. *See* Pls.' Statement of Disputed Facts [Byra doc. # 55, Abid doc. # 79], ¶¶ 21-23.

Likewise, Bristol-Myers asserts that Byra-Grzegorczyk's and Abid's poor performance reviews reflected their lack of competence and their bad attitude. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶¶ 332-333. However, Plaintiffs say that their poor performance reviews were fabricated by Gao in order to harass them. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc.

# 76, Abid doc. # 66], Ex. 1, ¶ 23. Plaintiffs allege that Gao yelled at them and verbally abused them during meetings, *see id.* Ex. 1, ¶¶ 40-41, while Bristol-Myers argues that it was Plaintiffs who raised their voices, *see, e.g.*, Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶ 214. All of these disputed facts go directly to Bristol-Myers' non-discriminatory reason for terminating Byra-Grzegorczyk and Abid and also to whether Gao did indeed discriminate against them because of their gender.

The Court has not pointed out every one of Defendant's 397 "undisputed" facts that the Court concludes are, in fact, disputed. Suffice it to say, the Court finds many issues of material fact in dispute and, thus, concludes that summary judgment is not appropriate on Plaintiffs' Title VII and CFEPA gender discrimination claims regarding their termination.

## B. Failure to Promote

Both Byra-Grzegorczyk and Abid claim that they were not promoted because of their gender. As an initial matter, Bristol-Myers is correct that any acts of discrimination that occurred more than 300 days before Plaintiffs filed their complaints with CHRO are barred by the statute of limitations. *See* 42 U.S.C. § 2000e-5(e)(1); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) ("[D]iscriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court."). Abid filed her CHRO charge on December 6, 2004 and Byra-Grzegorczyk filed her CHRO charge on December 13, 2004. Thus, any action occurring before February 10, 2004 and February 17, 2004, respectively, is outside of the 300-day period.

Although this does not affect their termination or hostile work environment claims, *see Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004), it does affect their failure to promote claims. Thus, Abid's assertion that she was not promoted in 1999 is barred by the statute of limitations. Abid also alleges that she inquired into criteria for advancement in November 2003.

*See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 1, ¶ 8. That claim, too, is barred by the statute of limitations.

While it is true that pursuant to the continuing violations doctrine, courts may occasionally consider events that occurred outside of the 300-day period, *see Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997), failure to promote is considered a "discrete act" subject to the statute of limitations. *See Petrosino*, 385 F.3d at 220 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Thus, in order to make out a failure to promote claim, Plaintiffs would need to show that at least one incident in which they applied for and were denied a promotion occurred within the 300-day period prior to the filing of their CHRO complaints. They have failed to do so.

Furthermore, in order to meet the *prima facie* standard for failure to promote, Plaintiffs must show that they actually applied for a promotion. *See Petrosino*, 385 F.3d at 226. "[A] prima facie case cannot be established merely with evidence that a plaintiff generally requested promotion consideration." *Id.* at 227 (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)). This element certainly cannot be established by merely asserting that they were not promoted. On the record before the Court, it does not appear that Byra-Grzegorczyk ever requested a promotion. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶ 344 ("While Byra-Grzegorczyk worked at [Bristol-Myers], she never questioned the appropriateness of her level."). Even if Abid's letter to Powell in November 2003 constituted an application for promotion, which the Court doubts, there is nothing on the record to suggest that she again sought a promotion within the 300-day period before the filing of her CHRO complaint. Thus, the Court grants summary judgment on Plaintiffs' failure to promote claims.

## C. Hostile Work Environment

To prevail on a hostile work environment claim, a plaintiff must show "conduct (1) that is 'objectively' severe or pervasive--that is, [conduct that] creates an environment that a reasonable person would find hostile or abusive [the 'objective' requirement], (2) that the plaintiff 'subjectively perceives' as hostile or abusive [the 'subjective' requirement], and (3) that creates such an environment because of plaintiff's sex . . . [the 'prohibited causal factor' requirement]." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citing *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). In order to satisfy the objective component, "the misconduct must be severe or pervasive." *Petrosino*, 385 F.3d at 221 (quotation marks omitted). The Second Circuit has instructed district courts as follows:

> The matter of whether the conduct alleged was so "severe or pervasive" as to create "an objectively hostile or abusive work environment," is to be decided based on the totality of the circumstances, in light of such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993)); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (stating that a hostile work environment is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."). A plaintiff can establish a hostile work environment by showing "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (citation and quotation marks omitted).

The Second Circuit has cautioned district courts considering hostile environment claims.

*See Feingold v. State of New York*, 366 F.3d 138 (2d Cir. 2004); *Terry v. Ashcroft*, 336 F.3d 128, 147-50 (2d Cir. 2003). The Second Circuit has explained that

> while the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that 'while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.' The environment need not be unendurable or intolerable. Nor must the victim's psychological well-being be damaged. In short, 'the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.

*Terry*, 336 F.3d at 148 (quoting *Whidbee v. Garzarelli Food Specialties, Inc*., 223 F.3d 62, 70 (2d Cir. 2000)). Furthermore, the Second Circuit has stated that

> hostile work environment claims present mixed question[s] of law and fact that are especially well-suited for jury determination. [T]hat the facts are undisputed does not automatically mandate summary judgment; rather, summary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion.

*Schiano v. Quality Payroll Sys*., 445 F.3d 597, 605 (2d Cir. 2006).

There is no question that Byra-Grzegorczyk and Abid subjectively believed that the work environment was hostile and/or abusive. Byra-Grzegorczyk reports that Gao reduced her to tears on numerous occasions and alleges that she went on short-term disability leave because of the stress and anxiety caused by Gao's behavior. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 6, ¶ 45. Abid says she suffered from anxiety, headaches, and insomnia and sought professional help for these medical problems. *See id.* Ex. 2, ¶¶ 111-120. The Court also finds that Plaintiffs' have presented sufficient evidence that a jury could conclude that Gao's treatment of them was based on their gender for the same reasons the Court denied summary

judgment on Plaintiffs' termination claims.

Thus, the only remaining question for the Court is whether Plaintiffs' perception of a hostile work environment was objectively reasonable. The Court finds that Byra-Grzegorczyk has presented sufficient evidence to permit a jury to conclude that her perception of a hostile work environment was objectively reasonable and thus the Court denies summary judgment on her claim. However, the Court grants summary judgment on Abid's hostile work environment claim, finding that even if the Court resolves all disputed facts in her favor, she has not shown that her perception was objectively reasonable.

**1. Byra-Grzegorczyk's Hostile Work Environment Claim**

Byra-Grzegorczyk's hostile work environment claim is mostly based on her weekly meetings with Gao, in which she claims Gao yelled at her, belittled her, pounded on her chest, and made statements such as "woman, I'm talking to you, Qi is talking to you." Byra-Grzegorczyk also claims that Gao harassed her by writing falsehoods into her performance reviews and by telling her that she would not get a second chance to do her job if she was unsuccessful. Finally, Byra-Grzegorczyk says that during the November 2003 meeting with PR&D, Gao belittled and insulted her in front of her colleagues, although she is not very precise as to what Gao actually said.

None of these incidents is extremely severe. Byra-Grzegorczyk does not allege, for example, that Gao physically threatened or assaulted her. *Cf. Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) (finding that even one incident of physical assault can be sufficient for hostile work environment claim). However, the incidents did occur frequently; according to Byra-Grzegorczyk, they occurred at least once a week (during her meetings with Gao) over the course of two and a half years. And the fact that Byra-Grzegorczyk went on short-term disability as a result of emotional

distress is not only relevant to her subjective state of mind, it is also relevant to whether the environment was objectively hostile.

To be sure, unfair criticism alone would not be sufficient for a hostile work environment claim. *See, e.g., Augustin v. Yale Club*, 2008 U.S. App. LEXIS 8775 (2d Cir. Apr. 23, 2008) ("[E]pisodes of name-calling, inappropriate behavior by a supervisor, and other perceived slights . . . do not constitute a hostile work environment."). However, the manner in which Gao purportedly delivered this criticism — yelling, beating her chest, and belittling Byra-Grzegorczyk in front of her colleagues — raises a genuine question as to whether these incidents were elevated from mere annoyances to harassment. Although this is a close question, the Court concludes that a reasonable jury could find that the harassment was sufficiently pervasive and/or severe and denies summary judgment on Byra-Grzegorczyk's Title VII and CFEPA hostile work environment claims.

## 2. Abid's Hostile Work Environment Claim

Unlike Byra-Grzegorczyk, Abid did not attend weekly meetings with Gao. Instead, her hostile work environment claim is based on Gao's behavior at the November 2003 meeting with PR&D and at the meetings discussing her annual performance reviews as well as other unspecified incidents of harassment. The Court concludes that these incidents in their totality are neither severe nor pervasive enough to survive a motion for summary judgment. "Isolated, minor acts or occasional episodes do not warrant relief." *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999). Although Abid claims that she was "unjustly criticized and tormented" by Gao during Byra-Grzegorczyk's short-term disability leave, *see* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 1, ¶ 13, she also asserts that Gao refused to meet with her or interact with her during that time. *See id.* ¶ 19. While a plaintiff need not detail each and every incident of

harassment, *Brennan v. Metropolitan*, 192 F.3d 310, 318 (2d Cir. 1999), conclusory allegations are not sufficient. Therefore, Abid's statement that she was "unjustly criticized and tormented" by Gao, without more detail, does not help her meet her burden. More is needed to survive a motion for summary judgment. *See, e.g.*, *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

To the extent that Abid bases her hostile work environment claim on the treatment experienced by Byra-Grzegorczyk, the Court rejects it. Although "evidence of harassment directed at other co-workers can be relevant to an employer's own claim," *Leibovitz v. New York City Transport Auth.*, 252 F.3d 179, 190 (2d Cir. 2001), "harassing conduct directed at someone other than [a] plaintiff . . . does not have the same impact" as harassment suffered by a plaintiff herself. The Court is simply not convinced that Abid experienced anything even approaching a hostile work environment. Therefore, Byra-Grzegorczyk's experience cannot salvage Abid's Title VII and CFEPA hostile work environment claims.

## IV. Retaliation under Title VII and CFEPA

Section 704(a) of Title VII makes it unlawful to retaliate against an employee, "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003). Byra-Grzegorczyk and Abid claim that Bristol-Myers retaliated against them for filing internal complaints with the Ombudsman and Human Resources and for filing their complaints with CHRO. More precisely, Plaintiffs contend that the following acts constituted

unlawful retaliation: the writing of negative performance reviews, the failure to promote, the failure to give references to potential employers, the failure to transfer them within the company, and their termination. Abid further alleges that she was denied tuition reimbursement in retaliation. Finally, Byra-Grzegorczyk asserts that her short-term disability benefits were terminated and that Bristol-Myers required that she continue meeting weekly with Gao in retaliation for filing complaints against the company.

The standard for retaliation is similar to the standard for discrimination under Title VII and CFEPA. In order to establish a *prima facie* case of retaliation, a plaintiff must show that: "[1] [s]he engaged in protected participation or opposition under Title VII [or CFEPA], . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quotation marks omitted).

If a plaintiff carries her *prima facie* burden, "the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *See Patterson*, 375 F.3d at 221 (quotations and citations omitted). Once the employer does so, the burden shifts back again to the employee to offer evidence showing that "the legitimate reasons offered . . . were not its true reasons, but were a pretext for discrimination." *Id*.

For reasons explained in more detail below, the Court grants summary judgment with respect to Plaintiffs' claims that Bristol-Myers retaliated against them by not giving references, by denying Byra-Grzegorczyk's short-term medical disability leave, by failing to promote them, by denying Abid a transfer within the company, by writing poor performance reviews, and by requiring Byra-

Grzegorczyk to attend weekly meetings. The Court denies summary judgment with respect to Plaintiffs' claims that Bristol-Myers retaliated against them by terminating their employment and by denying Abid tuition reimbursement.

## A. Termination

The Court finds that Plaintiffs have met the *prima facie* standard on their retaliation claim regarding their termination. Defendants argue that Byra-Grzegorczyk and Abid were not engaged in protected activity because Plaintiffs did not have "a good faith, reasonable belief that the underlying practice was unlawful." *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999). It is well established that "a plaintiff may state a prima facie claim for retaliation *even when* her primary claim for discrimination is insufficient to survive summary judgment." *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999) (emphasis added). "An employee is privileged to report and protest workplace discrimination, whether that discrimination be actual or reasonably perceived." *Matima v. Celli*, 228 F.3d 68, 78 (2d Cir. 2000). The Court finds no evidence that Plaintiffs did not in good faith believe themselves to be victims of discrimination, whether or not those perceptions turn out to be accurate. Therefore, the Court concludes that Plaintiffs engaged in protected activity under Title VII and CFEPA when they filed their CHRO complaints.

Bristol-Myers also maintain that key managers at Bristol-Myers were not informed of Plaintiffs' CHRO complaints until after the decision was made to eliminate WSG. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶ 278. Therefore, they argue, Plaintiffs cannot show that "the employer was aware of [her] participation in the protected activity." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (citations and quotations omitted). However, neither the Second

Circuit nor any other circuit has held that "to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007).

Whether key managers knew about Plaintiffs' CHRO complaints *is* relevant to the fourth element of a *prima facie* case, namely the existence of a casual connection between the protected activity and the adverse action, and to the ultimate question of whether retaliation played a motivating role in Plaintiffs' termination. However, Plaintiffs have presented evidence that at least DiDonato did in fact know about the CHRO complaints before the decision was made to eliminate WSG. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 11 at 93. Therefore, the Court concludes that Plaintiffs have adequately raised an issue of material fact as to what key managers knew of the CHRO complaints and when.

Bristol-Myers also argues that there is no causal connection between the filing of the CHRO complaints and Plaintiffs' termination because three months passed between the two events. While temporal proximity between protected activity and the adverse employment action may create an inference of retaliatory intent, the proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Bristol-Myers contends that the passage of three months in-between the filing of the CHRO complaints and Plaintiffs' termination is too far removed to create such an inference. However, Bristol-Myers began preparing the business plan for the elimination of WSG in December 2004, at roughly the same time the complaints were filed. The decision did not go into effect until March, but the actual decision was made very close in time to the filing of the complaints. Thus, a reasonable jury could conclude that Plaintiffs' have met their *prima facie* burden on their Title VII and CFEPA retaliation claims regarding their termination.

The Court now must decide whether Bristol-Myers has articulated a legitimate non-discriminatory reason for their termination and, if so, whether Plaintiffs have shown that the reason proffered is a pretext for discrimination. Bristol-Myers alleges, as in the discrimination claim, that Plaintiffs were fired because of poor work quality and attitude, not in retaliation for filing the complaints. However, as in the discrimination claim, the veracity of Bristol-Myers' proffered reason is very much in dispute. Therefore, the Court concludes that a genuine dispute of material fact exists such that Plaintiffs' retaliatory claims regarding their termination should be put to a jury. Therefore, the Court denies summary judgment with respect to these claims.

## B. Tuition Reimbursement

Abid asserts that she was denied tuition reimbursement in May 2004 in retaliation for filing several internal complaints with the company. According to Abid, she had previously received tuition reimbursement. However, this time, Klohr denied her request. Bristol-Myers claims that there is a long-standing policy to deny tuition reimbursement requests when an employee's work performance is not satisfactory. Abid argues that there is no such policy, and in any event, her work performance was satisfactory.

As an initial matter, the Court finds that Abid's internal complaints constituted protected activity. It is well established that even complaints filed internally will ordinarily invoke the anti-retaliation provisions of Title VII. *Cruz*, 202 F.3d at 566 (stating that "the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection"); *see also Matima*, 228 F.3d at 78-79; *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 65 (2d Cir. 1992). And it is clear that Klohr was aware of Abid's internal complaints. While Bristol-Myers may argue that those complaints were too far removed temporally

to support an inference of retaliation, it is clear from the record that around the time in which Abid's tuition reimbursement was denied, tensions between Plaintiffs and Bristol-Myers were high as a result of allegations of discrimination that Plaintiffs had made both formally with the Ombudsman and Human Resources and informally to Klohr and Didonato.

Bristol-Myers has potentially articulated a legitimate non-discriminatory reason for the denial — that Abid's poor performance reviews made her ineligible for tuition reimbursement under a long-standing company policy. However, if, as Abid claims, her performance reviews themselves were the product of discriminatory treatment on the part of Gao, then denying her tuition reimbursement because of those reviews could not be a legitimate non-discriminatory reason. Furthermore, whether Bristol-Myers had such a policy is itself disputed. *See, e.g.*, Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶ 203. Thus, the Court denies summary judgment with respect to Abid's tuition reimbursement claim because of these disputed issues of material fact.

## C. Refusal to Give References

In their Complaints, Plaintiffs alleged that Bristol-Myers retaliated against them by failing to give references to potential employers. However, Plaintiffs failed to address this claim of retaliation in their Response in Opposition to Motion for Summary Judgment [Byra doc. # 76, Abid doc. # 66]. Therefore, the Court considers these claims waived. *See Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006); *Ansell v. D'Alesio*, 485 F. Supp. 2d 80, 86 (D. Conn. 2007).

## D. Denial of Short-Term Disability Benefits

Byra-Grzegorczyk alleges that Bristol-Myers retaliated against her by denying her short-term disability benefits in May 2004 and by also failing to inform her that she could take unpaid leave

instead of using her vacation days for the period after the short-term disability benefits were cancelled and before she returned to work. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66] at 36. The Court finds no merit to this claim. As the Court explained above, a plaintiff must show that the employer took an adverse employment action against the plaintiff in order to make out a *prima facie* case of retaliation. *See Kessler*, 461 F.3d at 205-06. Here, as Bristol-Myers points out, the decision to terminate Byra-Grzegorczyk's short-term disability benefits was made not by Bristol-Myers, but by CORE, Inc., a third-party administrator. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶¶ 178-179. Byra-Grzegorczyk has presented no evidence to suggest that Bristol-Myers was involved in CORE, Inc.'s decision-making process. Furthermore, it appears from the record that Bristol-Myers actually did inform Byra-Grzegorczyk that she could potentially take unpaid leave. *See* Def.'s Mot. for Summ. J. [Byra doc. # 69, Abid doc. # 56], Ex. 81. Therefore, the Court grants summary judgment on this claim.

### E. Failure to Promote

Plaintiffs' claims that they were not promoted in retaliation for the filing of the complaints fail for the same reason that their discrimination claims fails — Plaintiffs have not alleged a discrete act of failure to promote within the relevant statute of limitations period. *See supra* Part III.B. Therefore, the Court grants summary judgment on this claim.

### F. Failure to Transfer

Plaintiffs both assert that they applied for several positions within the company and that they were denied a transfer in retaliation for filing their complaints. However, Plaintiffs have not presented evidence to show that these other departments were aware of the complaints or that their

supervisors were aware that they had applied for these other positions. Moreover, Defendants have presented evidence to the contrary. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], ¶¶ 367-374. Thus, because Plaintiffs cannot show any causal connection between the adverse employment action and the protected activity, the Court grants summary judgment on these claims. *See Patane*, 508 F.3d at 115 (affirming that causal connection is required for a *prima facie* showing of retaliation).

## G. Performance Reviews and Weekly Meetings

Finally, Plaintiffs argue that they were given poor performance reviews, and Byra-Grzegorczyk argues that she was required to attend weekly meetings with Gao, in retaliation for filing their complaints. Although the definition of an adverse employment action in the retaliation context is broader than in the discrimination context, a "plaintiff must [still] show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). The requirement of material adversity is "important to separate significant from trivial harms." *Id.*

The Court concludes that the poor performance reviews and the weekly meetings fail to meet this standard because neither reaches the level of being materially adverse. First, there is nothing materially adverse about requiring employees to attend meetings. Meetings are part and parcel of a normal employer-employee relationship. Byra-Grzegorczyk complains about the *manner* in which the meetings were conducted, but that is properly considered as part of her hostile work environment claim and not as part of her retaliation claim.

The question of whether negative performance reviews constitute a materially adverse action is a closer question. Certainly not every action taken by an employer that is adverse to the employee

is *materially* adverse. *See, e.g., Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (holding that application of a company's disciplinary policy to plaintiff was not materially adverse); *Chang v. Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (holding that oral and written warnings are not materially adverse). Negative performance reviews in particular "are generally not considered actionable forms of retaliation." *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 300 (E.D.N.Y. 2005); *see also Franchitti v. Bloomberg*, No. 07cv7496, 2005 U.S. Dist. LEXIS 19285, * 17 (S.D.N.Y. Aug. 12, 2005) ("[Plaintiff's] negative performance review, however, fails to qualify as an adverse action.."); *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999) ("[A] similarly thick body of precedent . . . refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions."); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (disciplinary filings are not adverse actions); *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996) (negative performance review is not adverse action).

That said, it is also true that sometimes negative performance reviews can be considered a part of an adverse action if the negative review leads to a plaintiff's demotion or termination. *See Brierly*, 359 F. Supp. 2d at 300. The Court has already denied summary judgment both with respect to Plaintiffs' sex discrimination claims and with respect to their retaliation claims regarding their termination. Plaintiffs may use evidence regarding their negative performance reviews to support these other claims. However, the negative performance reviews do not constitute an adverse action in and of themselves and thus the Court grants summary judgment on the negative performance reviews as a separate claim.

**V. Equal Pay Act**

Byra-Grzegorczyk claims that she was paid less than her immediate predecessor, Anthony Alexander, for performing the exact same job and therefore argues that Bristol-Myers violated the Equal Pay Act, 29 U.S.C. § 206(d) (2000). In order to make out a *prima facie* case under the Equal Pay Act, a plaintiff must show that "(1) the employer paid different wages to employees of the opposite sex; (2) the jobs entailed equal work requiring equal skill, effort and responsibility; and (3) the jobs are performed under similar working conditions." *Corning Glass Works v. Brennen*, 417 U.S. 188, 195 (1974); *see also Ryduchowski v. Port Auth.*, 203 F.3d 135, 142 (2d Cir. 2000). As an initial matter, Byra-Grzegorczyk has not stated what her or Alexander's salary was and, thus, has not presented adequate evidence to show that a pay disparity existed at all. Additionally, as Bristol-Myers points out, Byra-Grzegorczyk and Alexander did not perform equal work — she was a separations scientist and he worked in mass spectrometry and he had many direct reports while Byra-Grzegorczyk only had one. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 5 at 121-122.[3]

Furthermore, the Equal Pay Act creates exceptions when a pay disparity is based on "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1) (2000); *see also Ryduchowski*, 203 F.3d at 142. Here, Alexander had worked for Bristol-Myers for almost ten years while Byra-Grzegorczyk was a new employee, a fact that adequately explains any

---

[3] Bristol-Myers also points out that Byra-Grzegorczyk was not hired as a replacement for Alexander but rather to fill a newly-created position. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58] ¶ 394. This fact makes the comparison between Byra-Grzegorczyk and Alexander even more tenuous.

pay disparity that might have existed. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. #
76, Abid doc. # 66], Ex. 5 at 121.

Although Byra-Grzegorczyk makes other, more general allegations regarding pay differences
between herself and other male employees, she has not presented any evidence to support her
allegations. Therefore, the Court grants summary judgment on Byra-Grzegorczyk's Equal Pay Act
claim.

### VI. State Common Law Claims

**A. Promissory Estoppel**

Plaintiffs claim that Bristol-Myers is liable under a theory of promissory estoppel for failing
to investigate Plaintiffs' complaints pursuant to Bristol-Myers' non-discrimination and anti-
harassment policy. Bristol-Myers argues that the policy does not constitute a promise, that even if
it were a promise, Plaintiffs did not rely on it, and that even if they did rely on it, Bristol-Myers did
not violate the policy because they investigated all of Plaintiffs' complaints in a timely manner. The
Court does not need to decide whether Plaintiffs acted in reliance of the policy or whether Bristol-
Myers violated the policy, because the Court concludes that the policy is not a promise upon which
Plaintiffs could have reasonably relied.

"A fundamental element of promissory estoppel . . . is the existence of a clear and definite
promise which a promisor could reasonably have expected to induce reliance." *D'Ulisse-Cupo v.
Bd. of Dirs. Of Notre Dame High Sch.*, 202 Conn. 206, 213 (1987) (citations and quotation marks
omitted). More specifically,

> a mere expression of intention, hope, desire, or opinion, which shows no real
> commitment, cannot be expected to induce reliance and, therefore, is not sufficiently
> promissory. The requirements of clarity and definiteness are the determinative
> factors in deciding whether the statements are indeed expression of commitment as

opposed to expressions of intention, hope, desire, or opinion.

*Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 105-06 (2003). The policy at issue in this case is "at the most [a] statement[] of intention or an articulation of company goals and objectives, and cannot give rise to liability under a theory of promissory estoppel." *Peralta v. Cendant Corp.*, 123 F. Supp. 2d 65, 86 (D. Conn. 2000). It states, for instance, that "[Bristol-Myers] is committed to providing a bias-free work environment" and that "[i]t is the purpose of this policy to establish awareness as to the definition and forms of various types of harassment, and to provide a basis for the implementation of guidelines at the corporate, division and subsidiary levels to address the issue." Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 68 at 1, 5. Courts have consistently refused to find that anti-discrimination policies such as this one represent a promise that gives rise to a claim of promissory estoppel. *See, e.g.*, *Peralta v. Cendant Corp.*, 123 F. Supp. 2d at 86; *Ezold v. WellPoint*, No. 3:06cv381, 2007 WL 1238725, at *5 (D. Conn. Apr. 28, 2007); *Clouston v. On Target Locating Servs.*, No. 3:01cv2404, 2005 WL 2338883, at *7 (D. Conn. Aug. 19, 2005). Therefore, the Court grants summary judgment with respect to Plaintiffs' promissory estoppel claims.

## B. Breach of Contract

Byra-Grzegorczyk also claims breach of contract for Bristol-Myers' failure to adhere to its anti-discrimination and anti-harassment policies. As an initial matter, the Court is perplexed as to why Byra-Grzegorczyk would pursue this claim. In order to show that Bristol-Myers breached the anti-discrimination and anti-harassment policies, she must show that Bristol-Myers discriminated against and/or harassed her, in which case she can recover through her Title VII and CFEPA claims. If she cannot prove that Bristol-Myers discriminated against and harassed her, then the company did

not breach its anti-discrimination and anti-harassment policies and the claim must fail. Bringing this sort of duplicative claim only serves to muddy the waters, does not benefit the Plaintiffs, and is counterproductive to the efficient resolution of the case.

In this case, however, the Court need not decide whether Bristol-Myers breached their anti-discrimination and anti-harassment policies because while "an employer's personnel manual may . . . under appropriate circumstances . . . give rise to an express or implied contract between employer and employee," *Gaudio v. Griffen Health Serv. Corp.*, 249 Conn. 523, 532 (1999), the Court concludes that Bristol-Myers' anti-discrimination and anti-harassment policies do not create an enforceable contract in this case. The anti-discrimination policy "does not indicate that [Bristol-Myers] is undertaking any contractual obligations towards [Byra-Grzegorczyk]; rather it obliges [Bristol-Myers] to comply with federal and state anti-discrimination laws, and to undertake an investigation upon receiving complaints of discrimination and/or harassment." *Peralta*, 123 F. Supp. 2d at 83; *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1999) (anti-discrimination policy does not give rise to contractual liability); *Belgrave v. City of New York*, No. 95cv1507, 1999 WL 692034 (E.D.N.Y. Aug. 31, 1999) (no breach of contract claim where employee claimed that employer failed to follow its procedures for providing equal opportunity to employees).

The Court agrees with Bristol-Myers that "federal policy would not be served by allowing contractual recovery under such policies and procedures, as employers might thus be chary of publicizing and enforcing their complaint procedures." *Peralta*, 123 F. Supp. 2d at 84; *see also Malik v. Carrier Corp.*, 202 F.3d 97, 106 (2d Cir. 2000) ("The issue here is not the proper balance between employee rights and employer authority under state law. The issue is how to ensure that

federal policies are not undermined by imposing on employers legal duties enforceable by damages that reduce their incentives to take reasonable corrective action as required by federal law."). Thus, summary judgment is granted on Byra-Grzegorczyk's breach of contract claim.

## C. Defamation

Plaintiffs allege that Bristol-Myers defamed them by publishing blatantly false and malicious statements about their work performance in their mid-year and year-end performance reviews. In Connecticut, defamation requires that "the defendant published false statements that harmed the plaintiff, and that the defendant was not privileged to do so." *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc*., 234 Conn. 1, 27 (1995); *accord Morron v. City of Middletown*, 464 F. Supp. 2d 111, 117 (D. Conn. 2006); *Gore v. Colonial Penn Ins. Co.*, 335 F. Supp. 2d 296, 311 (D. Conn. 2004).

Bristol-Myers argues that Plaintiffs have not identified the alleged false statements with enough specificity to prevail on a claim of defamation. To the contrary, in their Response in Opposition to Motion for Summary Judgment [Byra doc. # 76, Abid doc. # 66], Plaintiffs identify many statements they claim are false. Defamation is actionable only if the statement at issue "conveys an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *Daley v. Aetna Life and Casualty Co.*, 249 Conn. 766, 795, 734 A.2d 112 (1999). Some of the statements Plaintiffs identify as defamatory can be more accurately described as opinion. *See* Pls.' Resp. in Opp'n. to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 69 ("A high school student could do a better job."). Some of the statements, however, are clearly factual. *See id.* ("Additionally [Byra-Grzegorczyk] inappropriately requisitioned unauthorized training and disguised

it as a service order leading to a misappropriation of company funds."); *id.* at Ex. 32 ("[Abid's] ineffective collaboration was primarily due to . . . a lack of basic chemical knowledge."). And while Bristol-Myers argues that every statement in the performance reviews is true, Plaintiffs dispute that contention. Thus, the Court concludes that, for purposes of summary judgment, there are disputed issues of material fact on the first prong of the defamation claim.

Furthermore, the Court finds that Bristol-Myers published Plaintiffs' performance reviews, although not in the normal way one thinks of publication. The Connecticut Supreme Court has held that "although intracorporate communications once were considered by many courts not to constitute publication . . . that view has been almost entirely abandoned, and we reject it here." *Torosyan*, 234 Conn. at 27-28. Therefore, in order to meet the publication prong, Plaintiffs need only to show that the performance reviews were published among supervisors and/or were placed in Plaintiffs' personnel files. *Id*. There is no question that Plaintiffs have presented evidence to satisfy this requirement.

Finally, while "review of an employee's job performance . . . [is] protected by a qualified privilege," *id*. at 29, Plaintiffs can overcome this privilege by showing that Bristol-Myers acted with "malice . . or reckless disregard as to [the statements'] truth." *Id*. Here, Plaintiffs clearly allege and provide evidence that Bristol-Myers acted with malice; accordingly, the Court finds that disputed issues of material fact exist with respect to the third prong. Therefore, the Court denies summary judgment on Plaintiffs' defamation claims.[4]

---

[4] In their Complaints, Plaintiffs also alleged that Bristol-Myers made defamatory statements to prospective employers following their termination. Apparently, Plaintiffs hired a company to pose as prospective employers in an attempt to discern what Gao and Klohr would say about them when asked for a reference. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc.

**D. Intentional Infliction of Emotional Distress**

Plaintiffs also allege that Bristol-Myers is liable for intentional infliction of emotional distress based upon the same allegations that constitute their hostile work environment claims. A claim for intentional infliction of emotional distress requires

> (1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (quotation marks omitted). Even if all factual disputes are resolved in favor of the Plaintiffs, they have failed to show that Bristol-Myers' conduct were "extreme and outrageous," and as such the Court does not address the other three elements.

The standard of outrageousness for cases of intentional infliction of emotional distress is high:

> Liability . . . has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!

*Morrissey v. Yale Univ.*, 268 Conn. 426, 428 (2004) (quotation marks omitted).

The mere fact that some of Plaintiffs' Title VII and CFEPA discrimination and hostile work environment claims have survived summary judgment does not necessitate the same result for their

---

# 76, Abid doc. # 66], ¶¶ 383-384. Gao and Klohr both refused to give any information other than to refer them to Human Resources. Plaintiffs have not reasserted this defamation claim in their Response and, thus, the Court considers the claim waived.

intentional infliction of emotional distress claims. "An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." *Manner v. Town of Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000).

The Court agrees with Bristol-Myers that the behavior attributed to Gao and other supervisors at Bristol-Myers does not rise to the level of "outrageous," even if, in Byra-Grzegorczyk's case, it might be sufficient for a hostile work environment claim. *See, e.g.*, *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 211-12 (2000) (finding that forced psychiatric examinations, forced resignation, condescending comments in front of colleagues, and removal of discharged employee under security escort was not extreme and outrageous); *Dollard v. Bd. of Educ.*, 63 Conn. App. 550, 552-53 (2001) (finding that hypercritical examination of plaintiff's professional and personal conduct, transferring her to school where she did not want to work, secretly hiring someone to replace her, publicly admonishing her, unnecessarily placing her under intensive supervision, and forcing her to resign not extreme and outrageous); *DeLaney v. Inst. of Living*, No. CV020097157S, 2002 WL 1559043, at *7 (Conn. Super. Ct. June 18, 2002) (finding that criticism of job performance not extreme and outrageous); *Emanuele v. Boccaccio*, No. CV900379367S, 1994 WL 702923, at *2 (Conn. Super. Ct. Dec. 1, 1994) (finding that "claims that the defendant made false accusations regarding the plaintiff's work performance and used coercion, threats and intimidation to force her to sign a document against her will, all for the purpose of depriving her of benefits and compensation" not extreme and outrageous); *Gagliardi v. E. Hartford Hous. Auth.*, No. 02cv478, 2005 WL 2177078, at *13 (D. Conn. Sept. 8, 2005) (finding that verbal and physical threats not extreme and outrageous); *Farricielli v. Bayer Corp.*, 116 F. Supp. 2d 280, 286 (D. Conn. 1998)

("No rational fact finder could conclude that the alleged conduct-yelling at, reprimanding and transferring plaintiff for work-related issues-was so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (quotation marks omitted)); *Johnson v. Chesebrough-Pond's USA Co.*, 918 F. Supp. 543, 552-53 (D. Conn. 1996) (finding that negative performance reviews, sudden termination, and being physically escorted from the premises not extreme and outrageous). Therefore, the Court grants summary judgment on Plaintiffs' intentional infliction of emotional distress claims.

### E. Invasion of Privacy

Byra-Grzegorczyk argues that Bristol-Myers is liable for invasion of privacy for disclosing information about her medical condition during her short-term disability leave. Byra-Grzegorczyk claims that when she returned to work, some of her co-workers knew details about her medical condition. *See* Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 6, ¶ 53. Bristol-Myers denies this, and further argues that it was Byra-Grzegorczyk who publicized information regarding her own medical condition on a phone message to administrative assistant Deborah Cadena. *See* Def.'s Mot. for Summ. J. [Byra doc. # 69, Abid doc. # 56], Ex. 66.

The particular claim of invasion of privacy that Byra-Grzegorczyk alleges requires "publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation." *Tarka v. Filipovic*, 45 Conn. App. 46, 53 (1997). "Publicity" means "that the matter is made public, by communicating it to the public at large." *Starratt v. Spencer*, No. CV940140926S, 2002 WL 1459706, at *4 (Conn. Super. Ct. May 30, 2002). The Court grants summary judgment on this claim because it finds no evidence whatsoever that

Bristol-Myers disclosed Byra-Grzegorczyk's information to anyone, let alone to the requisite number of individuals to meet the "public at large" standard.

As Bristol-Myers argues, Bristol-Myers' short-term disability benefits are administered by CORE, Inc., which only discloses an employee's medical information to Bristol-Myers with the employee's consent. Byra-Grzegorczyk has presented no evidence that either CORE or Bristol-Myers broke that protocol. Byra-Grzegorczyk herself admitted that CORE, not Bristol-Myers, "must have disclosed [her] confidential information." Pls.' Resp. in Opp'n to Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 6 ¶ 53.

Because there is no evidence that anyone at Bristol-Myers had access to her medical information from CORE, the only person from whom they could have received it is from Byra-Grzegorczyk herself. Byra-Grzegorczyk admits to leaving several long messages on Cadena's voice mail and admits to requesting that the messages be forwarded to Gao. *See* Def's 56(a)(1) [Byra doc. # 70, Abid doc. # 58], Pls.' 56(a)(2) [Byra doc. # 76, Abid doc. # 66], ¶ 180. There is simply no evidence that Byra-Grzegorczyk's co-workers possessed any knowledge about her medical condition that she herself did not disclose to them and plenty of evidence to suggest that most of her co-workers knew nothing about the reasons for her leave. *See, e.g.*, Def.'s Mot. for Summ. J. [Byra doc. # 76, Abid doc. # 66], Ex. 28 at 215; *id.* Ex. 7 at 40-41. Therefore, summary judgment is granted.

## F. Negligent Supervision

Byra-Grzegorczyk failed to address her claim of negligent supervision in her Response in Opposition to Motion for Summary Judgment [Byra doc. # 76, Abid doc. # 66]. Therefore, the Court considered these claims waived. *See Schaefer*, 457 F.3d 188; *Ansell*, 485 F. Supp. 2d at 86.

## VII. Conclusion

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's Motions for Summary Judgment [Byra doc. # 68, Abid doc. # 56]. Furthermore, the Court **GRANTS** Plaintiffs' Motions to Amend/Correct [Byra doc. # 89, Abid doc. # 79] and **DENIES** Defendant's Motions to Strike [Byra doc. # 82, Abid doc. # 74] as moot. The Court will issue a separate trial scheduling order. The following claims survive summary judgment:

•　Byra-Grzegorczyk's and Abid's Title VII and CFEPA sex discrimination claims on the basis of their termination.

•　Byra-Grzegorczyk's Title VII and CFEPA hostile work environment claim.

•　Byra-Grzegorczyk's and Abid's Title VII and CFEPA retaliation claims on the basis of their termination.

•　Abid's Title VII retaliation claim on the basis of the denial of tuition reimbursement.

•　Byra-Grzegorczyk's and Abid's defamation claims.

IT IS SO ORDERED.

/s/ ＿＿＿＿Mark R. Kravitz＿＿＿＿
United States District Judge

**Dated at New Haven, Connecticut: August 20, 2008.**